UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　Plaintiff,<br><br>v.<br><br>LARRY D. BELL<br><br>　　　Defendant | No.: 04 CR 20033 |

**DEFENDANT'S SECOND COMMENTARY ON SENTENCING FACTORS**

　　　NOW COMES the Defendant, LARRY D. BELL and Richard H. Parsons, Chief Federal Public Defender for the Central District of Illinois, by and through TIFFANI D. JOHNSON, Assistant Federal Public Defender, and pursuant to Title 18 U.S.C. Section 3551, 3553, 3582, 3561 & 3661, and pursuant to the recent Supreme Court decision in *Booker* submits the following sentencing memorandum on behalf of the defendant:

**Procedural History of Case**

1.　　That on June 2, 2004, the Defendant was charged in this cause in a one count bill of indictment with the offense of distributing a mixture or substance containing cocaine. The government filed notice pursuant to 21 U.S.C. § 841 of Mr. Bell's prior felony drug convictions in Cases #92-CF-569 and #98-CF-292.

2.　　On October 8, 2004, Mr. Bell changed his plea to guilty and his sentencing is scheduled for February 9, 2005.

**Legal Sentencing Factors to Be Considered**

3.　　Now that the United States Sentencing Guidelines are advisory, the Court has much more

1

flexibility in weighing factors to impose sentences. This Court should look to Chapter 7 of the Guidelines, dealing with violations of probation and parole --- which have always been advisory --- for guidance on how to approach the now advisory sentencing guideline regime.

4. Chapter 7 of the Guidelines specifies the importance of *flexibility* in an advisory sentencing regime. Specifically, Chapter 7 first emphasizes the importance of flexibility in imposing sentences for violations, because, as it states: "The Commission views these policy statements [contained in Chapter 7] as evolutionary and will review relevant data and materials concerning revocation determinations under these policy statements. Revocation guidelines will be issued after federal judges, probation officers, practitioners, and others have the opportunity to evaluate and comment on these policy statements." U.S.S.G. Ch. 7, A-1 (Authority). It is clear that the Commission expected, under an advisory system, to have judges, probation officers, and attorneys for both the Government and defendants to help shape an "evolutionary" revocation regime. Thus, the Commission was comfortable in allowing flexibility in revocation decisions in the hopes that a pattern of practice could be discerned, over time, but that such a practice would require the participation of all involved.

5. Further, to make such considerations, Chapter 7 refers to differing theories of revocation. The first involved a "breach of trust" approach, which secondarily considered the nature of the underlying offense. *Id.* at A-3(b). The second involved sanctions as though the revocation would be directed specifically at the violating conduct; as though the defendant was being punished for a new, specific crime. *Id*. The Commission stated that the first theory was preferable because, *inter alia,* "The potential unavailability of information and witnesses necessary for a determination of specific offense characteristics or other guideline adjustments could create questions about the accuracy of factual findings concerning the existence of those factors." *Id.* The Defendant submits

that this quandary is analogous to the problems defendants and judges faced before *Booker*. Using a lower standard of proof, and relying on letters from the Government raises substantial questions about the accuracy of the enhancement imposed upon a defendant, and thus, the Courts should shy away from relying on a Presentence Investigative Report that is intended to be "fact heavy", and merely attempts to quantify the amount of drugs, or money involved in a transaction or offense, and should rather focus on the offense conduct actually admitted, and look to the totality of the circumstances surrounding his or her offense involved. In a Post-*Booker* regime, this process is precisely what is needed to give Congress the opportunity to respond, if at all, to the Supreme Court.

6. That being said, 18 U.S.C. § 3553(a) *et seq.* should provide the most guidance --- when taken together with relevant information from the Probation Department --- to the Court in determining the sentence to be imposed upon a defendant. Individuals found guilty of an offense shall be sentenced, in accordance with the provisions of 18 U.S. C. 3553, to (1) a term of probation as authorized by subchapter B; (2) a fine as authorized by subchapter C; or (3) term of imprisonment as authorized by subchapter D.

7. The court shall impose a sentence sufficient, BUT NOT GREATER THAN NECESSARY, to comply with the purposes set forth. 18 U.S.C. 3553(a)(1). This is the overriding standard which must be applied now that the Supreme Court has excised 18 U.S.C. § 3553 (b) from the Sentencing Reform Act. *United States v. Booker*, 2005 U.S. LEXIS 628, *82.

8. The Breyer majority opinion states that the "district courts, while not bound to apply the Guidelines, must *consult* those Guidelines and take them into account when sentencing." *See* 18 USC §§ 3553(a)(4). *United States v. Booker*, __ U.S. __, 2005 WL 50108, *27 & n.1 (U.S. Jan. 12, 2005) (Breyer, J.) (emphasis added). Therefore, at minimum the district court has to consider the guideline calculations and ranges. Note, however, that 18 USC § 3553(a) lists the guidelines as the

*last* among the factors to be considered. The *first* factor is "the nature and circumstances of the offense *and the history and characteristics of the defendant*." This Court, therefore, should determine the sentence *first*, then check its conclusions against what the guidelines recommend. The "holistic" sentence, that encompasses all factors (including prohibited factors), should necessarily be lower, because the guideline range does not include previously prohibited or discouraged factors.

9. No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence. 18 U.S.C. § 3661. *See also United States v. Booker*, 2005 LEXIS 628, *82 (expressly endorsed by J. Breyer).

10. A defendant who has been found guilty of an offense *may* be sentenced to a term of *probation* unless the offense is a Class A (life imprisonment) or Class B (25-years or more) felony and the defendant is an individual, or probation has been expressly precluded. 18 U.S.C. § 3561 (a). For a felony, the authorized term of probation is 1 - 5 years. 18 U.S.C. § 3561 (c).

11. The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is NOT *an appropriate means of promoting correction and rehabilitation*. 18 U.S.C. § 3582(a).

12. The court, in determining the particular sentence to be imposed, shall consider --- (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; and (4) the kinds of sentences and the sentencing range established by the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide

restitution to any victims of the offense. 18 U.S.C. 3553(a).

13. The sentence imposed shall (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with the needed educational or vocational training, medical care of other correctional treatment in the most effective manner. 18 U.S.C. 3553(a)(2).

14. Since the Sentencing Guidelines are now advisory, the departure provisions set forth in Section 5, Parts H and K, while providing a template for determining a reasonable sentence, no longer dictate to district judges how much weight, if any, they may give to mitigating or aggravating factors which may impact the sentence.

15. After the advisory guideline range is determined, traditional sentencing factors should be considered, including, *but not limited to*: (1) age, (2) education, (3) vocational skills, (4) mental and emotional conditions, (5) physical conditions, (6) drug, alcohol or gambling addictions, (7) employment record, (8) family ties and responsibilities; (9) role in the offense, (10) criminal history; (11) social-economic status; (12) military, civic, charitable, or public service; (13) lack of guidance as a youth; (14) aberrant behavior; and (15) cooperation. Although prior to *Booker* the Sentencing Commission dictated the weight a judge could give to each of these factors, if any, it is now the district judge who determines how much weight to give each factor, and how the factors impact the ultimate reasonableness of the sentence to be imposed. The district judge is now free to consider the traditional factors used by judges for centuries and assign the appropriate weight thereto.

16. "Sentencing will be harder now than it was a few months ago. District Courts cannot just add up the figures and pick a number within a narrow range. Rather, they must consider all of the applicable factors, listen carefully to defense and government counsel, and sentence the person

before them as an individual. *Booker* is not an invitation to do business as unusual." *United States v. Ranum*, No. 04-CR-31 (E.D/Wisc. Jan 19, 2005) (J. Adelman) ("In every case, courts must now consider all of the § 3553(a) factors, not just the guidelines. And where the guidelines conflict with the other factors set forth in § 3553(a), courts will have to resolve the conflicts.")

17. Judge Adelman noted a different and clearly more flexible approach to sentencing after *Booker* than that which Judge Paul Cassell had espoused in his earlier decision in *United States v. Wilson, 2005* U.S. Dist. LEXIS 735 (D.Utah Jan 13, 2005). With his typical clarity, Judge Adelman explained:

> The directives of Booker and [18 U.S.C.] § 3553(a) make clear that courts may no longer uncritically apply the guidelines and, as one court suggested, 'only depart . . . in unusual cases for clearly identified and persuasive reasons.' *United States v. Wilson*, Case No. 2:03-CR-0082, 2005 WL 78552, at *1 (D. Utah Jan 13, 2005). The approach espoused in *Wilson* is inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in *Booker*, directing courts to consider all of § 3353(a) factors, many of which the guidelines either reject or ignore. For example, under §3553(a)(1) a sentencing court must consider the 'history and characteristics of the defendant.' But under the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1, his education and vocational skills, § 5H1.2, his mental and emotional conditions, § 5H1.3, his physical condition including drug or alcohol dependence, §5H1.4, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socio-economic status, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12. The guidelines' prohibition of considering these factors cannot be squared with the §3553(a)(1) that the court evaluate the 'history and characteristics' of the defendant. The only aspect of a defendant's history that the guidelines permit courts to consider is criminal history. Thus, in cases in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside of the guideline range.

18. In some cases, a defendant's educational, treatment or medical needs may be better served by a sentence which permits the offender to remain in the community pursuant to 18 U.S.C. § 3553(a)(2)(D). Therefore the sentencing court must also evaluate the need to provide the defendant with education, training, treatment or medical care in the most effective manner. 18 U.S.C. §

3553(a)(2)(D), which might conflict with the guidelines, which in most cases offer only prison. See U.S.S.G. § 5C1.1 (describing limited circumstances in which court can impose sentence other than imprisonment).

19.    While one can't fault the *Wilson* Opinion's general premise that Congress has clearly indicated that is primary concern is deterrence, incapacitation and promotion of respect for the law, that doesn't logically lead to its unsupportable conclusion that Congress and a centralized Sentencing Commission are much better equipped than district judges to decide what constitutes "just punishment." There is certainly a superficial appeal to the *Wilson* Opinion's observation that "the court is poorly suited to consider elasticities and other factors that would go into a sensible deterrence calculation," or its continuing observation that, "[o]n the other hand, the Sentencing Commission with its ability to collect sentencing data, monitor crime rates, and conduct statistical analyses, is perfectly situated to evaluate deterrence arguments." *Wilson*, slip op. at 17. But the issue isn't that simple.

20.    Hearings and studies, of course, are the best method by which to assess whether certain types of sentences will produce *general* deterrence with respect to millions of possible perpetrators. But an assessment of the specific-deterrent value of a particular sentence to a *particular* defendant can be made only with the benefit of knowing that defendant's individual characteristics and circumstances. Thus, to be accurate, the *Wilson* opinion should also have observed that while the Sentencing Commission may be "perfectly situated" to evaluate general deterrence issues, it was "poorly suited" to consider specific deterrence -- and that district courts are, in fact, "perfectly suited" to make this type of individual assessment. By collapsing these two fundamental objectives of punishment, the *Wilson* opinion simply endorses the twenty-year-old--now discredited-- assumption underlying mandatory guidelines; that individual characteristics don't have any place

in sentencing decisions.

21.     The *Wilson* opinion is equally weak when it comes to conclusions about the relative weight to be given to various objectives articulated in § 3553.  Again, Congress has certainly indicated its belief that general deterrence and incapacitation are very important goals.  Yet, independent Article III judges are part of a co-equal branch of government and have been given the responsibility -- by common law and by virtue of 18 U.S.C. §§ 3553(a), 3661 and 3582 -- of achieving individual justice by considering the individuals before them.  Accordingly, they simply cannot abdicate that responsibility, as the court in *Wilson* appeared to conclude they should, simply because a nationwide legislative body had indicated its desire that courts give law enforcement objectives serious consideration.  The *Wilson* opinion provides no justification for so heavily weighting law-enforcement objections over individualized factors.  Indeed, any such deference would conflict with the lifetime tenure the Framers provided district judges, which was intended to encourage them to use their independent judgement in the face of determined political pressure.

22.     The *Wilson* opinion goes on to state that because the Guideline are the only nationwide standard available, it should be used in all but the most exceptional cases.  However, by choosing the narrowest adjective, "exceptional" -- and fashioning a strict standard that the *Booker* remedial majority never even suggested -- the *Wilson* Court incorrectly concludes that district judges must abdicate the duties of an independent judiciary to incorporate individual factors and simply defer to the debatable "sense" of Congress that individual factors are less important than general ones.  Such a dramatic shift in responsibility cannot be based on the bald and unsupported reasoning employed in *Wilson*.

23.     In United States v. Meyers, 2005 WL 165314 (S.D. Iowa Jan 26, 2005), Judge Pratt notes the distinct views of Booker reflected in Judge Adelman's Ranum opinion and Judge Cassell's

Wilson ruling and states:

> This Court adopts Judge Adelman's view. To treat the Guidelines as presumptive is to concede the converse, i.e., that any sentence imposed outside the Guideline range would be presumptively unreasonable in the absence of clearly identified reasons. If presumptive, the Guidelines would continue to overshadow the other factors listed in section 3553(a), causing an imbalance in the application of the statute to a particular defendant by making the Guidelines, in effect, still mandatory.

24. After a long quote from the *Ranum* opinion noting how the requirements of § 3553(a) can conflict with aspects of the guidelines, Judge Pratt in *Myers* highlights:

> In citing *Ranum*, this Court does not mean to be unduly harsh about the wisdom contained in the Guidelines, for wisdom is there. Wisdom, however, also resides in the other statutory sentencing factors, but was not allowed expression under the former mandatory scheme. Each of the factors enumerated under § 3553(a) is, in reality, an expression of our society's multiple interests in sentencing an individual.

Calling *Booker* an "an invitation, not to unmoored decision making, but to the type of careful analysis of the evidence that *should* be considered when depriving a person of his or her liberty," Judge Pratt proceed thoughtfully reviewed the purpose of the factors in § 3553(a) in the context of a minor gun possession case. And, after finding that an "aberrant behavior" departure under guideline § 5K2.20 was sought by the defendant and not contested by the government, Judge Pratt concluded by explaining why the factors of § 3553(a) make a "term of imprisonment in this case is completely unwarranted," and why he imposed a sentence of probation "to deter others from committing similar acts."

### **Specific 3553 Factors for Consideration in this Case**

25. Considering the timing of Booker, and the due date of this Commentary, defense counsel has not yet had time to fully investigate and assess the presence or absence of § 3553 factors in the case at hand. The Defendant therefore hereby requests permission to supplement this commentary on or before the day of sentencing with a section specifically addressing the § 3553 factors that he

9

considers to be applicable to his individual case. This additional time to supplement will give defense counsel the necessary time to fully investigate and assess the presence or absence of § 3553 factors for this particular defendant, an inquiry that was inapplicable prior to *Booker*.

### Presentencing Report Objections

26.    A PSR report was drafted on December 20, 2004 and revised on January 18, 2005 providing for a guideline range of 188 to 235 months based upon a Career Offender enhancement as a result of alleged prior convictions for: (1) Robbery, Kankakee County No. 93-CF-137, PSR ¶29 (2) Possession With Intent to Deliver, Kankakee County No. 98-CF-292, PSR ¶30 (3) Aggravated Battery, Iroquois County No. 03-CF-05, PSR ¶32.

27.    During his change of plea hearing, Mr. Bell did not admit that any of these prior convictions support an enhancement for Career Offender, and hereby objects to these convictions supporting an enhancement to a guideline range of Career Offender.

28.    Without the Career Offender enhancement based upon these three contested convictions, Mr. Bell would have a Base Offense level 18 and Total Offense level 15, guideline range 41 to 51. This range, Mr. Bell contends, is the appropriate sentencing range.

29.    Mr. Bell therefore objects to all portions of the PSR that support or are affected by a Career Offender enhancement including, but not limited to: ¶¶ 23, 24, 29, 30, 32, 67, 71, and 75.

30.    Mr. Bell also objects to the raising of his statutory maximum from 20 to 30 years, his term of supervised release from 3 to 6 years, and his maximum fine from $1,000,000 to $2,000,000 as listed in PSR ¶ 66, 69, 74.

31.    Mr. Bell objects to PSR ¶ 72 and 73 arguing that he is eligible for probation pursuant to 18 U.S.C. § 3561(c) which allows probation for Class C felonies where the maximum penalty is less than 25 and more than ten years.

32.     Mr. Bell hereby withdraws his Objections I, II & IV currently listed in the Addendum to the PSR Report revised on January 18, 2005 to be replaced with the objections listed herein.  Mr. Bell requests that Objection III currently listed in the Addendum to the PSR Report revised on January 18, 2005 remain for ruling.

### Prior Convictions Raising a Statutory Maximum

33.     The line of cases leading from *Apprendi* to *Blakely* to *Booker* has left behind one beleaguered exception - prior convictions that raise the statutory maximum.  In *Almendarez-Torres v. United States*, the 5-4 majority, relying on a distinction between elements and sentencing factors, did not require pleading in the indictment of the prior conviction that increased the maximum from two to twenty years. *Almendarez-Torres*, 523 U.S. 224 (1998).  In his concurring opinion in *Apprendi v. New Jersey*, Justice Thomas renounced his swing vote in *Almendarez-Torres*; in *Ring v. Arizona*, the Court abandoned any distinction based on sentencing factors. *Ring v. Arizona*, 536 U.S. 584 (2002); *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Booker* ignored *Almendarez-Torres* in its recital of precedent in this area.

34.     The Court made express the deterioration of *Almendarez-Torres* in *Dretke v. Haley*, a habeas corpus case under 28 U.S.C. § 2254. *Dretke v. Haley*, 541 U.S. 386 (2004). In his challenge to a Texas recidivist sentence,  Mr. Haley presented an alternative argument that the failure to afford trial rights on the priors violated the Constitution because *Almendarez-Torres* should be overruled or should not be extended to the additional fact that the priors were sequential.

35.     The *Haley* court specifically applied the doctrine of constitutional avoidance to *Almendarez-Torres*, stating: "Respondent contends that *Almendarez-Torres* should be overruled or, in the alternative, that it does not apply because the recidivist statute at issue required the jury to find not only the existence of his prior convictions, but also the additional fact that they were sequential . .

. These difficult constitutional questions . . . are to be avoided if possible." Given that sufficiency based on *In Re Winship*, 397 U.S. 358 (1970) was at issue in *Haley*, the Court would also have had to consider extension of *Almendarez-Torres*, a Fifth Amended right to indictment case, to the trial rights being asserted by Mr. Haley.

36. Defenders have been challenging the application and extension of *Almendarez-Torres* to the amended § 1326 and to the Armed Career Criminal Act, only to face rejection based on the position that only the Supreme Court can overrule *Almendarez-Torres*. Now, under the rules set out in *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) intervening Supreme Court authority has undermined the reasoning or "mode of analysis" of the cases that avoid the question. Instead, the statutes must be construed in a manner that avoids a decision on the constitutional questions, as in *Buckland*, in which the Ninth Circuit reconstrued the federal drug statutes. *Buckland*, 277 F.3d at 1179-81.

37. Neither the illegal reentry statute nor the Armed Career Criminal Act forecloses construction consistent with Fifth and Sixth Amendment pleading and trial rights. Both have been amended to add more and more variables in the sequence and factual analysis necessary to consider the priors as predicates. *Haley* requires that the courts construe these statutes to avoid the serious constitutional question regarding the validity of *Almendarez-Torres* and extension of that case.

38. The identical statutory *Apprendi*-based argument should apply to the firearms, illegal reentry, and other guideline enhancements keyed into prior convictions based upon *Blakely*.

### Burden of Proof for PSR Objections

39. Post-*Blakely* precedent is only reversed on the Sixth Amendment question of whether enhancements must be decided by a jury, not on the requirement that enhancements must be found beyond a reasonable doubt, which is a Fifth Amendment Due Process argument. The ruling in *United States v. Booker* 125 S.Ct. 738, 748, ___ U.S. ___ (2005) is strictly about the Sixth

Amendment, and does not address the Fifth Amendment question of what standard should be applied to support enhancements made pursuant to the Sentencing Guidelines. Just because a the district judge is now allowed to rule upon advisory enhancements, does not mean that the district judge should continue to use the preponderance of the evidence standard to make this ruling.

40.     In determining guideline enhancements, this Court should utilize the reasonable doubt standard which derives from the Fifth Amendment. *See In re Winship*, 397 U.S. 358, 364 (1970) This Court should recognize that the sentencing statutes do not actually set a standard of proof for sentencing enhancements. The preponderance of the evidence standard that has been heretofore utilized derives from Chapter 6 of the guidelines. The question of whether this provision withstands Constitutional muster was not addressed by the Booker Court, and given the closeness of the *Booker* decision on jury rights, the reasonable doubt standard must prevail.

41.     In support of this argument, one only needs to consult recent Supreme Court precedent. The rationale of *Summerlin v. Schriro* that retroactivity did not apply because judicial determinations beyond a reasonable doubt were sufficiently reliable supports the use of a reasonable doubt standard. *Schriro v. Summerlin*, 124 S.Ct. 2519, ___ U.S. ___ (2004).

42.     Also supporting a reasonable doubt standard is Justice Thomas's footnote 6 in his dissent to Justice Breyer's opinion in *Booker*, in which he quotes Chapter 6 regarding the Commission's belief that the preponderance standard applies, then says "The Court's holding today corrects this mistaken belief." *Booker*, 125 S.Ct. at 798.

43.     The serious remaining constitutional question regarding reasonable doubt opens a statutory construction argument that subsumes the actual constitutional question. On the same day that *Booker* was decided, the Court issued its opinion in *Clark v. Martinez*, 125 S.Ct. 716, ___ U.S. ___ (2005), (when deciding which of two plausible statutory constructions to adopt, a court must consider the

necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail--whether or not those constitutional problems pertain to the particular litigant before the Court).

44. The federal sentencing statutes, therefore, should be construed to avoid the difficult constitutional question of whether harsher sentencing -- whether presumptive or required except in extraordinary circumstances -- violates the Fifth Amendment right to due process when the greater punishment is based on less than an admission or proof beyond a reasonable doubt.

45. This is just what the Ninth Circuit did in *Buckland* to save the federal drug statute. 277 F.3d 1173, 1179-81 (9th Cir. 2002) *cert. denied* 122 S.Ct. 2314 (2002) (the Court noted that every reasonable construction must be resorted to in order to try to save a statute, and ruled that its was fairly possible to construe §841 to require proof beyond a reasonable doubt to save the statute from unconstitutionality under *Apprendi*).

46. Even without Justice Thomas's note on the effect of the first part of *Booker* on Chapter 6, the statutory construction argument would require the guidelines and commentary to fall under *Stinson v. United States*, 113 S.Ct 1913, ___ U.S. ___ (1993) (commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution, a federal statute, or is inconsistent with or a plainly erroneous reading of that guideline).

47. Thus this Court, Defendant respectfully submits, should construe the burden of proof as beyond a reasonable doubt to avoid violating the defendant's Constitutional right to due process.

### Statement of Reasons for Imposing Sentence

48. If this Court imposes a sentence exceeding 24-months, the defendant hereby requests that this Court state in open court during sentencing its reasons for imposition of the sentence, including its reasons for applying or denying application of (1) requested 18 U.S.C. § 3553(a) factors (2)

traditional sentencing factors; and (3) non-traditional but applicable sentencing factors. See 18 U.S.C. § 3553(c).

49.    Additionally, the defendant requests a clear statement on what burden of proof was used in determining sentencing factors.

          Respectfully Submitted,

          LARRY BELL, Defendant

          RICHARD H. PARSONS
          Federal Public Defender

          s/Tiffani D. Johnson
BY:_____
          TIFFANI D. JOHNSON, Bar No. 6278909
          Assistant Federal Defender
          300 West Main Street
          Urbana, Illinois 61802
          Phone: (217) 373-0666
          Fax: (217) 373-0667
          Email: tiffani_johnson@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorney Richard N. Cox.

          s/Tiffani D. Johnson
          _____
          TIFFANI D. JOHNSON, Bar No. 6278909
          Assistant Federal Defender
          300 West Main Street
          Urbana, Illinois 61802
          Phone: (217) 373-0666
          Fax: (217) 373-067
          Email: tiffani_johnson@fd.org

C:\Documents and Settings\Tiffani D Johnson\My Documents\SENTENCE\Bellsentmemo.frm